UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYNTHIA KING,

       Plaintiff,                                    Hon. Janet T. Neff

v.                                               Case No. 1:13-CV-397

BORGESS LEE MEMORIAL
HOSPITAL, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #38). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **dismissed**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). Plaintiff is an adherent of the Muslim faith. She began working for Defendant Borgess Lee Memorial Hospital on October 13, 2003. Plaintiff's job duties included "basic secretary duties and patient interactions which included putting arm bands on patients and other duties." Plaintiff refused, however, to "put arm bands on male patients" as such conflicted "with the tenants of her religion." Plaintiff also "voiced her concerns about touching the male patients." Prior to the appointment of Defendant Season Marinch as supervisor of Plaintiff's work unit, Plaintiff's religious beliefs were accommodated by "members of [Plaintiff's] management team." Plaintiff was later informed that she "should find other work." Plaintiff

was afforded 60 days to locate other work. Plaintiff was unable to secure other employment at which point her employment with the hospital was terminated. The hospital eventually replaced Plaintiff with a younger individual. Plaintiff initiated the present action alleging claims of religious and age discrimination under federal and state law. Plaintiff's age discrimination claims have since been dismissed. (Dkt. #31). Defendants now move for summary judgment as to Plaintiff's remaining religious discrimination claims. It is not clear whether Plaintiff is asserting a religious accommodation claim, a religious discrimination claim, or both. Despite the fact that Plaintiff was represented by counsel when this action was initiated, the Court has nevertheless broadly interpreted Plaintiff's complaint as asserting both types of claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th

Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.       Title VII Religious Discrimination Claim against Defendant Marinich**

Plaintiff has asserted Title VII claims against Defendant Season Marinich. As the Sixth Circuit has indicated, however, "Title VII does not allow for liability on the part of any person or entity other than Plaintiff's 'employer.'" *Han v. University of Dayton*, 541 Fed. Appx. 622, 629 (6th Cir., Nov. 5, 2013). The term employer, however, "does not include the 'supervisors,' 'managers,' or 'co-workers'

of a plaintiff." *Id.* Accordingly, the undersigned recommends that Defendant Marinich be granted summary judgment as to Plaintiff's Title VII claims.

**II.        Title VII Religious Accommodation Claim**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's. . .religion." 42 U.S.C. § 2000e-2(a)(1). The term "religion," as employed in Title VII, "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Thus, an employer must accommodate an employee's religious beliefs unless doing so imposes on the employer an undue hardship. In this respect, the Sixth Circuit has held that "to require an employer to bear more than a *de minimis* cost in order to accommodate an employee's religious beliefs is an undue hardship." *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007) (quoting *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994)).

To establish a prima facie case for failure to accommodate religious beliefs, Plaintiff must show: (1) she holds a sincere religious belief that conflicts with a requirement of her employment; (2) she has informed her employer about the conflict; and (3) she was disciplined or discharged for failing to comply with the conflicting employment requirement. *Tepper*, 505 F.3d at 514. If Plaintiff establishes a prima facie case, the burden then shifts to the employer "to show that it could not reasonably accommodate the employee without undue hardship." *Id.*

      A.      Plaintiff has Established a Prima Facie Case

Defendant argues that it is entitled to relief because Plaintiff cannot establish that her sincerely held religious beliefs conflicted with a requirement of her position. In her complaint, Plaintiff alleges that the requirements of her position conflicted with her religious belief that she not touch male patients. Thus, Plaintiff refused, due to her religious convictions, to place identification bands on male patients. Defendant argues that Plaintiff, in her deposition, testified that her refusal to perform certain aspects of her position was due to a desire to not be around ill patients, rather than the result of a conflict with her religious beliefs. While Plaintiff did indicate that her unwillingness to perform certain aspects of her position was due, in part, to her "not being comfortable being in close proximity with very ill patients," Plaintiff also testified that, "I cannot touch the male patients according to my religious beliefs" and, moreover that, "my religion does not allow me to touch men other than my family." (Dkt. #39, Exhibit 3 at 81-88, 110-33). Plaintiff has also demonstrated that she informed Defendant of this particular issue and, moreover, that she was terminated because she refused to perform the offending aspects of her position. The Court concludes, therefore, that Plaintiff has established a prima facie case for failure to accommodate her religious beliefs. As discussed below, however, Defendant is nevertheless entitled to relief because it has demonstrated that it could not reasonably accommodate Plaintiff's religious beliefs without suffering undue hardship.

      B.      Accommodating Plaintiff's Religious Beliefs Imposes an Undue Hardship

As of June 2012, Defendant Season Marinich was employed as the Emergency Department Supervisor at Borgess Lee Memorial Hospital. (Dkt. #39, Exhibit 1 at 5, 119). As part of this position, Marinich was responsible for "all aspects" of the emergency department, including

supervision of the ward secretaries. (Dkt. #39, Exhibit 1 at 119-20). On or about June 5, 2012, Marinich met with Plaintiff, who was employed as a ward secretary, to discuss certain aspects of Plaintiff's position and job performance. (Dkt. #39, Exhibit 1 at 130-32; Dkt. #39, Exhibit 4). During this meeting, Plaintiff indicated that, due to her religious beliefs, she could not touch people and did not want to be in close proximity to patients. (Dkt. #39, Exhibit 1 at 131-33). As a result, Plaintiff indicated that she did not place identification arm bands on patients and, moreover, refused to perform CPR in emergency circumstances, both requirements of her position. (Dkt. #39, Exhibit 1 at 131-32; Dkt. #39, Exhibit 4).

On June 7, 2012, Marinich arranged a meeting with Plaintiff and several other hospital employees to further discuss the matter. (Dkt. #39, Exhibit 1 at 132-33). Marinich asked Plaintiff to describe "what her specific concerns were with her job responsibilities that were in conflict with her Muslim religion." (Dkt. #39, Exhibit 1 at 134). Plaintiff responded that "she was not, according to her Muslim religion, allowed to. . .touch any male except for her husband." (Dkt. #39, Exhibit 1 at 134). When Marinich suggested to Plaintiff that she could wear gloves to place the armbands on male patients, Plaintiff declined this suggested accommodation as "not acceptable." (Dkt. #39, Exhibit 1 at 136; Dkt. #39, Exhibit 3 at 141-42). Plaintiff indicated that the only accommodation acceptable to her would be to permit her to simply "clip the armbands to the chart" and assign to somebody else the responsibility for actually placing identification armbands on male patients. (Dkt. #39, Exhibit 3 at 134-35, 141-42). Marinich explained to Plaintiff that "placing armbands on patients, escorting patients to treatment rooms and administering CPR to patients in an emergency were duties of the Ward Secretary position." (Dkt. #39, Exhibit 4). Plaintiff nevertheless responded that she "could not perform these job duties." (Dkt. #39, Exhibit 4).

Marinich and others determined that Plaintiff's refusal to perform the aforementioned job duties created "a significant patient safety concern." (Dkt. #39, Exhibit 4, Attachment 2). Accordingly, Plaintiff's request to be relieved of the aforementioned job duties was denied. (Dkt. #39, Exhibit 4, Attachment 2). Instead, Plaintiff was offered a 60 day "transition period. . .to seek other positions internally with Borgess Health." (Dkt. #39, Exhibit 4, Attachment 2). Plaintiff made no effort to secure other employment with Borgess Health. (Dkt. #39, Exhibit 3 at 148-54; Dkt. #39, Exhibit 4).

On June 21, 2012, a male patient was admitted to the emergency department at Borgess Lee Memorial Hospital during Plaintiff's work shift. (Dkt. #39, Exhibits 4, 11, and 12). Because Plaintiff continued to refuse to perform the required responsibilities of her position, specifically placing on incoming patients an identification armbands, the patient in question was provided an "incorrect armband" which "created a safety risk for [the] patient." (Dkt. #39, Exhibits 4, 11, and 12). Defendant Marinich and the Chief Nursing Officer concluded that "it created an unacceptable risk to patient care to allow [Plaintiff] to remain as the Ward Secretary in the Emergency Department if she refused to place patient identification bracelets on patients as she registered them." (Dkt. #39, Exhibit 4). Plaintiff was immediately removed from her position as Ward Secretary, but continued to be paid through August 6, 2012, when her employment was terminated. (Dkt. #39, Exhibit 4).

That accommodating Plaintiff's religious beliefs, in a manner satisfactory to Plaintiff, imposes an undue burden on Defendant is patently obvious. Plaintiff's refusal to perform the most fundamental requirements of her position, as the evidence demonstrates, results in very real risks to patient safety and welfare. Plaintiff's refusal to perform her job duties may also expose the hospital to civil liability to the extent that patient information is improperly disclosed to others or to the extent that Plaintiff's conduct results in patients not receiving appropriate or timely treatment.

While Plaintiff may have preferred that Defendant accommodate her religious beliefs by simply assigning certain of her job duties to others, Defendant need only offer Plaintiff a "reasonable accommodation." *See Trout v. Electronic Data Systems Corp.*, 151 Fed. Appx. 390, 399 (6th Cir., Oct. 7, 2005). Plaintiff was offered a reasonable accommodation, as well as the opportunity to secure other employment within the hospital, but declined both offers. As the evidence makes clear, Defendant could not accommodate Plaintiff's religious beliefs without experiencing undue hardship. Plaintiff has presented no evidence creating a genuine dispute of material fact concerning this claim. Accordingly, the undersigned recommends that Defendant Borgess Lee Memorial Hospital be granted summary judgment as to this claim.

**III.        Title VII Religious Discrimination Claim**

To establish a Title VII claim for religious discrimination, Plaintiff must demonstrate the following: (1) she was a member of a protected class; (2) she experienced an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside of the protected class or was treated differently than similarly situated employees. *Tepper*, 505 F.3d at 515. If Plaintiff can make such a showing, the burden shifts to Defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If Defendant makes the requisite showing, the burden shifts back to Plaintiff who must show that Defendant's proffered rationale "is a pretext for discrimination." *Id.* at 515-16.

Plaintiff, who was terminated from Defendant's employ, certainly suffered an adverse employment action. *Id.* at 515. It is not necessary, however, for the Court to dwell on whether Plaintiff can satisfy the remaining elements of this particular claim because, as detailed above, Defendant has

amply demonstrated that its reason for terminating Plaintiff's employment was not tainted by discrimination, but was instead based on legitimate concerns for patient safety. Plaintiff has failed to present any evidence from which a reasonable person could conclude that Defendant's proffered rationale is merely a pretext for discrimination. Accordingly, the undersigned recommends that Defendant Borgess Lee Memorial Hospital be granted summary judgment as to this claim.

### IV. State Law Religious Accommodation Claims

Plaintiff also asserts discrimination claims under the Michigan Elliott-Larsen Civil Rights Act (ELCRA). To the extent that Plaintiff asserts the claim that the hospital was required to accommodate her religious beliefs, such claim must fail because the Elliott-Larsen Civil Rights Act does not impose on employers any duty or obligation to accommodate an employee's religious beliefs. *See, e.g. Smith v. Northstar Dining Chesterfield, LLC*, 2014 WL 4829591 at *10 (E.D. Mich., Sept. 29, 2014) ("the ELCRA does not include an affirmative duty to accommodate an employee's religious beliefs"). Accordingly, the undersigned recommends that Defendants Marinich and Borgess Lee Memorial Hospital be granted summary judgment as to this claim.

### V. State Law Religious Discrimination Claim

Under the ELCRA, an employer may not discriminate against an individual "because of religion." *See Ludwig v. IPC Print Services, Inc.*, 2007 WL 466133 at *5 (Mich. Ct. App., Feb. 13, 2007) (citing Mich. Comp. Laws § 37.2202). Absent direct evidence of discrimination, Plaintiff's claim is analyzed pursuant to the shifting burden analysis articulated in Section III above. *Ludwig*, 2007 WL 466133 at *5.

Plaintiff has presented no direct evidence of discrimination. Thus, to establish a prima facie case of discrimination, Plaintiff must establish the following: (1) she was a member of a protected class; (2) she experienced an adverse employment action; (3) she was qualified for the position; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *Id.* Again, even if the Court assumes that Plaintiff can make out a prima facie case of discrimination, Defendant has clearly demonstrated that its reason for terminating Plaintiff's employment was not based on discriminatory rationale, but was instead premised on legitimate concerns for patient safety. Plaintiff has failed to present any evidence from which a reasonable person could conclude that Defendant's proffered rationale is merely a pretext for discrimination. Accordingly, the undersigned recommends that Defendants Marinich and Borgess Lee Memorial Hospital be granted summary judgment as to this claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #38), be **granted** and this action **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                            Respectfully submitted,

Date:  October 24, 2014                       /s/ Ellen S. Carmody
                                                    ELLEN S. CARMODY
                                                    United States Magistrate Judge